**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MARVIN DANIEL HUDSON,

Defendant–Appellant.

No. 06-6199

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-06-00003-001-M)**

---

Submitted on the briefs:[*]

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma for Defendant–Appellant.

John C. Richter, United States Attorney, and James F. Robinson and Sue Tuck Richmond, Assistant United States Attorneys, Oklahoma City, Oklahoma, for Plaintiff–Appellee.

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant pled guilty to conspiracy to infringe a copyright in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. §§ 371 and 2319(b)(1).  The district court sentenced him to a one-year term of imprisonment and ordered him to pay restitution to Microsoft in the amount of $321,663.  In his plea agreement with the government, Defendant waived his right to challenge his conviction or sentence, but he now seeks to appeal the restitution order on the ground that Microsoft suffered no actual loss from the offense.

## BACKGROUND

Defendant and his co-conspirators advertised via facsimile a "Microsoft Closeout Sale" offering steep discounts on various Microsoft products.  Builder's FirstSource ("BFS"), a Maryland company, responded to the advertisement and placed an order for 537 copies of Microsoft Office 2000 Professional Edition at a total purchase price of $85,383. Upon receiving the software, however, the company's operations manager became suspicious of the software's authenticity and contacted Microsoft, which confirmed that the software was counterfeit.  BFS refused to pay for the software and turned all copies over to the government.  Defendant was then charged with the instant offense.

The presentence report ("PSR") prepared for the district court following Defendant's plea of guilty stated that the estimated retail price for the counterfeit software was $599.99 per copy and that Defendant was therefore "responsible for

a loss of $322,194.63 for guideline calculation purposes and restitution." (PSR at 10.) The PSR further stated that Microsoft had submitted a declaration of loss statement claiming that it was "owed restitution in the amount of $321,663.00." (*Id.*) The PSR provided no facts supporting this figure beyond the earlier estimated retail price for the software.

In a memorandum filed eight days before the sentencing hearing, Defendant argued that there was "a complete lack of information identifying the pecuniary harm suffered by Microsoft" and, therefore, that there was no basis for the district court to order restitution. (Doc. 19 at 13.) At the sentencing hearing, neither party mentioned this objection until after the district court had rendered its judgment. Defendant's counsel then reminded the court of the objection and asked whether he could assume that it had been overruled. The court responded, "Yes, the Court missed that." (Sent. Tr. at 37.) Without explanation, the court then overruled the objection. The court made no factual findings regarding the amount of actual loss suffered by Microsoft.

## DISCUSSION

As an initial matter, we must consider whether Defendant waived his right to appeal this issue. "[W]e generally enforce plea agreements and their concomitant waivers of appellate rights." *United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc) (per curiam). However, because "'a defendant who waives his right to appeal does not subject himself to being sentenced

-3-

entirely at the whim of the district court,'" not every issue can be waived by agreement. *United States v. Black*, 201 F.3d 1296, 1301 (10th Cir. 2000) (quoting *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992)). For instance, "a waiver may not be used to preclude appellate review of a sentence that exceeds the statutory maximum." *Id.*

In *United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995), the Fourth Circuit considered whether challenges to the legality of a restitution order can be waived by agreement. Citing to *Marin*, the court concluded that "[b]ecause a restitution order imposed when it is not authorized by the [applicable restitution statute] is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution order are similarly outside the scope of a defendant's otherwise valid appeal waiver." *Id.* at 1147. Therefore, the court held that the defendant's valid waiver of her right to appeal did not bar her from contesting the district court's restitution order on the ground that it exceeded the court's statutory authority under 18 U.S.C. § 3663(a)(1). In a recent decision, the Fourth Circuit reiterated the *Broughton-Jones* rationale:

> Although we enforce appeal waivers that are knowing and voluntary, even valid appeal waivers [do] not bar appellate review of every sentence. . . . Just as a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race, a defendant could not be said to have waived his right to appellate review of a restitution order imposed when it is not authorized by the [applicable

restitution statute]. This is because federal courts do not have the inherent authority to order restitution, but must rely on a statutory source.

*United States v. Cohen*, 459 F.3d 490, 497-98 (4th Cir. 2006) (alterations in original) (citations and quotations omitted). The Ninth Circuit has adopted the *Broughton-Jones* rule, holding that even a voluntary and knowing waiver of the general right to appeal does not affect a defendant's ability to appeal a district court's violation of the restitution statute. *United States v. Phillips*, 174 F.3d 1074, 1076 (9th Cir. 1999). *But see United States v. Schulte*, 436 F.3d 849, 851 (8th Cir. 2006) (reaching contrary conclusion).

We find the *Broughton-Jones* reasoning persuasive. Following the lead of the Fourth and Ninth Circuits, we conclude that regardless of whether Defendant's waiver of appellate rights would otherwise be enforceable, he cannot be deemed to have waived his right to appeal the legality of the court's restitution order. This conclusion is supported by the recent panel decision in *United States v. Gordon*, --- F.3d ---, 2007 WL 915074 (10th Cir. Mar. 28, 2007), published while this opinion was under consideration. *See id.* at *3-4 (questioning whether defendant can ever waive right to appeal unlawful restitution order; suggesting that plea agreement contains implied term providing that judge will order restitution in legal manner). We therefore turn to the merits of Defendant's appeal, reviewing the legality of the restitution order de novo. *United States v. Nichols*, 169 F.3d 1255, 1278 (10th Cir. 1999).

Defendant argues that the district court erred in imposing the restitution order because Microsoft suffered no actual losses from his conduct. "A restitution order must be based on actual loss," which the government bears the burden of proving. *United States v. Quarrell*, 310 F.3d 664, 678, 680 (10th Cir. 2002). The purpose of restitution "is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993). Consequently, a district court that "order[s] restitution in an amount greater than the total loss caused by" the offense thereby "exceed[s] its statutory jurisdiction and impose[s] an illegal sentence." *Id.*

The government contends that Microsoft suffered the actual loss of "the sale that Microsoft would have made to Builder's FirstSource had Defendant not sold Builder's FirstSource counterfeit Microsoft products." (Appellee's Br. at 19.) We disagree. The government provides no support for its contention that Defendant's actions thwarted this theoretical future sale.[1] *Cf. United States v. Young*, 272 F.3d 1052, 1056 (8th Cir. 2001) (holding that district court clearly erred in larceny case by ordering restitution for lost profits based only on victim's undocumented estimate of lost retail sales; concluding that because government

---

[1]Even if the government's argument were correct, the restitution order would still exceed actual loss. Restitution must be based on net lost profits, not on total retail price. *See United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006).

failed to prove lost profits below, restitution must be limited to insurance losses). As an initial matter, we are very skeptical of the implicit suggestion that BFS's agreement to purchase 537 copies of the software for a total price of less than $86,000 proves that BFS would have agreed to purchase the same number of copies from Microsoft for more than $321,000. Furthermore, given the fact that BFS quickly turned the counterfeit software over to the government, we are unable to see how Defendant prevented Microsoft from selling its software to BFS. Nothing in the record suggests that Microsoft's potential to sell software to BFS was changed by Defendant's actions—if anything, Microsoft was just made aware that BFS was a potential purchaser of its products. While we can conceive of instances where the distribution of a counterfeit good to a consumer for even a limited period of time could deprive the copyright owner of a potential sale, this case involves professional office software, all copies of which were turned over to the government within fifteen days of receipt and without having been used. There is no reason to believe that the purchaser's demand for this software would have changed within those fifteen days, and thus there is no reason to believe that any sales were diverted from Microsoft by Defendant's actions.

While we have been unable to find any cases directly addressing the issue presented here, we find informative the Fourth Circuit's reasoning in *United States v. Adams*, 19 Fed. App'x 33 (4th Cir. 2001) (per curiam) (unpublished). *Adams* presented a somewhat different factual situation, as the infringing goods in

that case were confiscated before the defendant could sell them. However, the court's reasoning extends to the instant situation. In *Adams*, the Fourth Circuit vacated the district court's restitution order because "the immediate confiscation of Adams' shipment prevented Adams from usurping the copyright holders' potential sales and deriving personal gain." *Id.* at 35. Similarly, in this case BFS's refusal to pay for the software prevented Defendant from deriving any personal gain from the sale, and because all copies of the infringing software were quickly seized from BFS by the government, Microsoft's ability to sell the genuine software to BFS was in no way affected by Defendant's actions. We therefore conclude that, just as in *Adams*, the copyright holder in this case suffered no actual loss.

The government's assertion that Defendant's actions deprived Microsoft of potential sales is not supported by the record, and the government does not contend that Microsoft suffered loss in any other way. We are thus unable to see how the order of restitution can be viewed as anything *but* a windfall for Microsoft. Because the government failed to prove that Microsoft suffered any actual loss, no restitution should have been ordered. We therefore **REVERSE** and **VACATE** the district court's restitution order.