# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2665

_____

United States of America,      *
     *
     Plaintiff - Appellee,      *
     *
     v.      *
     *
Paula Rae Petruk,      *
     *
     Defendant - Appellant.      *

Appeals from the United States
District Court from the
District of Minnesota.

_____

No. 06-2666

_____

United States of America,      *
     *
     Plaintiff - Appellee,      *
     *
     v.      *
     *
Ernest Anthony Stevenson,      *
     *
     Defendant - Appellant.      *

_____

Submitted: December 14, 2006
Filed: April 25, 2007

_____

Before LOKEN, Chief Judge, MURPHY and SHEPHERD, Circuit Judges.

_____

LOKEN, Chief Judge.

Paula Petruk and Ernest Stevenson pleaded guilty to conspiring to fraudulently obtain federal housing subsidies in violation of 18 U.S.C. §§ 371 and 641. Under the Mandatory Victim Restitution Act (MVRA), the district court at sentencing "shall order" restitution to a victim of this offense. 18 U.S.C. § 3663A(a)(1), (c)(1)(a)(ii). The government can be a "victim" entitled to restitution, United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006), but the award must be based on "the amount of loss *actually caused* by the defendant's offense." United States v. Rhodes, 330 F.3d 949, 953 (7th Cir. 2003) (emphasis in original).

The plea agreement recited that the parties did not agree on the proper amount of restitution. Petruk and Stevenson now appeal the district court's[1] determination that they are jointly and severally liable for restitution to the U.S. Department of Housing and Urban Development (HUD) in the amount of $45,441, the aggregate subsidies paid during the conspiracy period, December 1987 to August 2001. We conclude that the government's actual loss in this type of case is the amount of subsidies paid *minus* the amount HUD would have paid had Petruk and Stevenson timely and truthfully disclosed the relevant circumstances. Because the documentary record confirms that no subsidies would have been paid, we affirm.

**I.**

In December 1987, Stevenson began receiving "Section 8" federal housing subsidies for renting a single family home in Duluth, Minnesota, to Petruk, a mildly retarded tenant who qualified for Social Security disability as well as Section 8 benefits. A local public housing agency, the Duluth Housing and Redevelopment Authority (HRA), administers the Section 8 tenant assistance program for HUD. See

---

[1]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota.

42 U.S.C. § 1437a(b)(6).[2] When Stevenson sold the Duluth home and bought a home in Floodwood, Minnesota, Petruk moved to the Floodwood property, and the subsidies continued. To qualify for the subsidies, Petruk certified annually that her household comprised only herself and her two children when they were living with her. Stevenson signed and submitted lease agreements on standard HUD forms providing that only the tenant's family as approved by HRA would reside in the rented property. In fact, Stevenson claimed both homes as his Minnesota homestead each year; represented that he resided in the homes in loan applications, purchase agreements, and insurance policies; and at times lived in the homes with Petruk. HRA terminated Petruk's Section 8 assistance in November 2001 when an investigation revealed that "Ernest Stevenson has been residing in your household since December 1, 1987." This indictment followed. In pleading guilty, Petruk and Stevenson admitted the lengthy conspiracy to defraud.

At the change-of-plea hearing, defendants admitted only that Stevenson "at times" lived with Petruk while she was receiving Section 8 subsidies. The parties then submitted the restitution issue to the district court on a documentary record. Defendants submitted numerous documents tending to show that (i) Petruk was eligible for Section 8 subsidies throughout the conspiracy period; (ii) Stevenson, an over-the-road truck driver employed by out-of-state trucking companies, lived in his truck during most years, except for brief visits to his girlfriend, Petruk; and (iii) for two additional years, Stevenson lived with other members of Petruk's family in Duluth. Defendants' Sentencing Memorandum argued that restitution was proper only for those portions of the conspiracy when Stevenson in fact lived in Petruk's home. Defendants urged the court to order restitution in the amount of $10,146.

---

[2]Under the Section 8 tenant assistance program, a landlord is paid the difference between a percentage of an eligible tenant's household income and 90-110% of the fair market rent in the area. See 42 U.S.C. § 1437f(o)(1)(B), (2).

The government responded with a Position With Respect to Sentencing.  The government first argued that its loss equals the aggregate amount of subsidies unlawfully obtained during the course of the conspiracy.  Alternatively, the government submitted a lengthy affidavit by HUD's criminal investigator together with extensive documentary evidence tending to show that Stevenson and Petruk treated the rented properties as Stevenson's residence for all legal purposes except his dealings with HUD and HRA.  Indeed, Stevenson spent the night before a warrant search with Petruk in the Floodwood home.  Therefore, the government argued, whether he slept in his truck while working was irrelevant.

The presentence investigation reports recommended restitution in an amount equal to the total subsidies paid.  Defendants objected.  Based on the documentary evidence, the district court found that "Stevenson continuously resided with Petruk at the Duluth property and then at the Floodwood property."  Based on this finding, the court  concluded that HUD is entitled to restitution of the full amount of the subsidies paid because "all of the Duluth HRA's payments to Stevenson on Petruk's behalf . . . were fraudulently obtained as part of [the] conspiracy."  Stevenson and Petruk appeal, arguing that the finding they continuously resided together was clearly erroneous.  We review a restitution order for abuse of discretion and the finding of the amount of loss for clear error.  United States v. Liner, 435 F.3d 920, 926 (8th Cir. 2006); United States v. Miller, 419 F.3d 791, 792 (8th Cir. 2005); United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005).  The government must prove the amount of restitution owed by a preponderance of the evidence.  United States v. Oslund, 453 F.3d 1048, 1062 (8th Cir. 2006).

## II.

We begin our analysis with a question not addressed by the parties -- why does Stevenson's residence matter? If the government was correct in arguing to the district court that the proper restitution is always disgorgement of all subsidies fraudulently

obtained, then the court did not need to find where Stevenson resided while he engaged in the conspiracy to defraud. But the government does not urge this broad theory on appeal. Implicit in the government's approach on appeal is the concession it made in United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000) -- when a government agency is a victim of fraud because it paid subsidies or benefits as a result of the fraud, the agency's actual loss for MVRA purposes is the amount paid *minus* the amount that would have been paid in the absence of fraud.

This is the principle that applies in determining actual loss for purposes of the defendant's offense level under the guidelines. See U.S.S.G. § 2B1.1, comment. (n.3(F)(ii)). Although the few cases addressing this issue are inconsistent,[3] the principle seems equally appropriate in determining restitution under the MVRA. The modern trend in private civil litigation endorses use of the common law remedy of restitution to punish intentional wrongdoers by compelling the disgorgement of all ill-gotten gain. See Restatement (Third) of Restitution and Unjust Enrichment § 51 (Tentative Draft No. 5, Mar. 12, 2007). *Automatic* disgorgement of government benefits or subsidies obtained by fraud would likewise be punitive in nature. As such, it would be an appropriate criminal forfeiture remedy. See United States v. Hamaker, 455 F.3d 1316, 1337 (11th Cir. 2006).[4] However, while restitution under the MVRA may be a form of punishment for Ex Post Facto Clause purposes, see United States v. Schulte, 264 F.3d 656, 661-62 (6th Cir. 2001) (collecting cases), it is clear that Congress intended that restitution be a compensatory remedy from the victim's

---

[3]See United States v. Harms, 442 F.3d 367, 380-81 (5th Cir. 2006); United States v. Dawkins, 202 F.3d 711, 715 (4th Cir. 2000); United States v. Sapoznik, 161 F.3d 1117, 1121-22 (7th Cir. 1998). Some state courts have applied this principle in determining the amount of restitution due to agency victims of welfare fraud. See People v. Akins, 128 Cal. App. 4th 1376, 1384 & n.6 (Cal. App. 2005); State v. Harvey, 547 N.W.2d 706, 709 (Minn. App. 1996).

[4]In this case, the indictment included a forfeiture claim to all proceeds of the fraud conspiracy, but the government either abandoned or dismissed that claim.

perspective. Therefore, government agencies, like private MVRA victims, should be limited to compensation for their actual losses.

Thus, the relevant question is whether HUD acting through HRA would have paid Section 8 subsidies during the conspiracy period if the agency knew that Stevenson was "residing" with Petruk. Petruk and her children were clearly eligible for Section 8 assistance, so the contention that defendants were eligible for a portion of the total subsidies cannot be rejected out of hand. See 42 U.S.C. § 1437f(o)(4).

The district court did not clearly err in finding that the rented homes were Stevenson's *legal* residence during the entire fourteen-year conspiracy. Stevenson's declaration that the homes were his Minnesota homestead throughout the period is doubtless sufficient to support this finding. See Minn. Stat. § 273.124(a) ("residential homestead" is residential real estate "occupied and used for the purposes of a homestead by its owner, who must be a Minnesota resident"). Moreover, Stevenson identified the rented properties as his home addresses in connection with numerous financial transactions, often misrepresenting that he and Petruk were husband and wife. He also received mail at the homes from everyone except HRA and HUD. Likewise, the court's finding that Stevenson lived with Petruk rather than other family members when in Duluth was not clearly erroneous. The owner of the home where Stevenson claimed to reside averred that he in fact lived with Petruk.

On the other hand, defendants presented unrefuted evidence that Stevenson lived in his truck for months on end, only visiting Petruk for brief periods that might, they argue, qualify him for the "guest" exclusion in the Section 8 Lease Agreement.[5] This prompts the question whether the term "reside" or "residence" in the HRA/HUD documents encompassed Stevenson's legal residence, or was limited to whether he

---

[5]The HUD lease form defines guest as, "A person in the contract unit with the consent of a tenant family member for no more than 14 consecutive days and not to exceed 30 days in a year."

actually lived in Petruk's rented home. Section 8 subsidies are based on the total income of the "tenant family" living in the subsidized premises. See 42 U.S.C. § 1437f(o)(2)(A). Stevenson's income would doubtless have disqualified the Petruk household any months he was actually living with Petruk. But if tenant income is the relevant factor, "reside" may mean "living with," not legal residence.

The government's brief asserts that "Stevenson's residence at the properties with Petruk while receiving Section 8 subsidies on her behalf was specifically precluded by Section 8 regulations." If true, that would confirm that the district court's finding as to legal residence adequately supports the restitution award. The government's documentary evidence included a lengthy affidavit by the HUD Special Agent who conducted this investigation. She asserted, but without citation to authority, that Petruk received the subsidies "despite the exclusion of owner-occupied housing from the receipt of Section 8 benefits." However, a criminal investigator is not the proper witness to establish such an exclusion. Moreover, the assertion of a total "owner-occupied housing" exclusion is inconsistent with an explicit homeownership provision in the statute. See 42 U.S.C. § 1437f(y).

Though our review of this complex statute and Title 24 of the Code of Federal Regulations uncovered no provision automatically precluding Section 8 rental subsidies if the rental unit's owner resides with the subsidized tenant, HUD documents signed by Stevenson confirm the government's position. The annual Lease Agreements with Petruk required each member of the "tenant's family" to be disclosed on the lease and approved by the HRA. The Housing Voucher Contracts signed in connection with each Lease Agreement provided:

> The Owner agrees that the endorsement on the [monthly rental payment] check . . . shall be a certification by the Owner that . . . The Family . . . do not own, or have any interest in the Contract unit.

Thus, had Petruk and Stevenson timely disclosed Stevenson, the owner of the "Contract unit," as a member of the tenant family, that disclosure would have automatically disqualified the application, and no subsidies would have been paid, regardless whether Stevenson planned to live in his truck for substantial portions of the lease term. For this reason, the district court's finding that Stevenson "continuously resided with Petruk," even if limited to a finding of legal residence, meant that HUD's actual loss was equal to the full amount of the subsidies paid.

The judgments of the district court are affirmed.

_____