# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1355

_____

United States of America,      *
     *
     Plaintiff - Appellee,      *
     *
     *    Appeal from the United States
     v.      *    District Court for the
     *    District of North Dakota.
James A. Chalupnik,      *
     *
     Defendant - Appellant.      *

_____

Submitted: October 16, 2007
Filed: February 1, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

BMG Columbia House ("BMG") sells CDs and DVDs by mail. Many BMG discs prove to be undeliverable. During the time in question, BMG arranged with the United States Postal Service ("USPS") to gather and discard undeliverable discs, as it was less costly for BMG to produce replacement discs than to pay for the return and restocking of undeliverable discs. James Chalupnik, a janitorial supervisor at the downtown post office in Fargo, North Dakota, took several thousand undeliverable CDs and DVDs from the post office trash and sold them to used record stores. Initially charged with felony mail theft, Chalupnik pleaded guilty to misdemeanor copyright infringement in violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319(b)(3). The district court sentenced Chalupnik to two years probation and ordered him to pay

BMG restitution in an amount equal to his documented sales proceeds, $78,818. Chalupnik appeals the restitution award. We conclude that the government failed to prove the amount of loss to BMG proximately caused by Chalupnik's offense. Accordingly, we vacate the restitution award and remand for resentencing.

**I.**

Chalupnik supervised disabled persons who provided janitorial services at the downtown post office in Fargo. In October 2001, he began removing undeliverable CDs and DVDs from the post office trash and selling the discs to used record stores. In June 2006, USPS began investigating the disappearance of undeliverable CDs and DVDs at the Fargo post office. A surveillance camera revealed Chalupnik hiding discs in a telephone closet, and 3,580 CDs and 125 DVDs were found in his possession. He admitted selling the discs to used record stores in Moorhead and St. Cloud, Minnesota, and Sioux Falls, South Dakota. Store records reflected purchases of several thousand discs and payments to Chalupnik totaling $78,818. The stores had no record of what CD and DVD titles they purchased from Chalupnik, but one store owner told investigators that most if not all were BMG products.

Chalupnik pleaded guilty to a charge that he willfully infringed numerous copyrighted sound recordings for private financial gain between October 2001 and July 2006 in violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319(b)(3). At the change of plea hearing, he admitted selling discs for $78,818 without authority from the copyright owners. At sentencing, the government recommended a sentence of probation. The district court agreed and sentenced Chalupnik to two years probation.

The presentence investigation report (PSR) recommended that Chalupnik be ordered to pay BMG mandatory restitution in the amount of $78,818 because his offense conduct deprived BMG of "the option of returning the CD's to the market or destroying them." Chalupnik submitted a Sentencing Memorandum opposing

restitution. Noting the absence of evidence that BMG owned any copyright interest in the discs, Chalupnik argued that BMG was not a victim of his offense. He further argued that the government could not prove actual loss because BMG threw away or destroyed undeliverable discs, and because customers of used music stores will not buy new products by mail so BMG cannot show it lost sales on account of his offense conduct. In response, the government submitted a letter from BMG's senior counsel asserting that USPS "routinely returns DVDs" to BMG for restocking, that BMG accepts CDs returned by customers and "most likely" returns a portion to inventory for resale, that BMG competes with used record stores in the "larger music market," and that Chalupnik's offense conduct resulted in no royalty payments being made to the copyright owners. The government's Sentencing Memorandum argued that BMG is a victim because it owns the discs, sells them with permission of the copyright owners, and controls the disposition of undeliverable discs; that each time Chalupnik sold an undeliverable disc, the artist lost a royalty and BMG lost a potential sale; and that the amount of those losses is conservatively estimated by Chalupnik's gross revenues, $78,818.

At sentencing, the government introduced no additional evidence relating to BMG's actual loss. Chalupnik testified that all undeliverable discs were discarded in the post office trash or, after a change in practice in March 2005, were bagged and sent to a postal facility in the Twin Cities. Agreeing with the government and the PSR, the district court ordered Chalupnik to pay $78,818 in restitution to BMG. The court explained: "I do believe that there is in fact a lost opportunity to . . . BMG, that the people that bought those CD's . . . would likely have bought new CD's, and that that represents a real and substantial loss to . . . BMG in the amount of $78,818." The court further noted that, in a civil lawsuit by BMG, Chalupnik's liability would include disgorgement of his profits from converting BMG property; therefore, imposing a fine payable to the United States instead of restitution might well increase Chalupnik's total liability.

-3-

## II.

The Mandatory Victims Restitution Act ("MVRA") provides that a sentencing court "shall order" a defendant convicted of "an offense against property under this title" to pay restitution to a "victim." 18 U.S.C. §§ 3663A(a)(1), (c)(1). The restitution award in this case raises two distinct issues: whether BMG is a "victim" entitled to mandatory restitution under the MVRA[1] and, if so, what is the proper amount of restitution to be awarded. The first is primarily an issue of law that we review *de novo*. See United States v. Wilcox, 487 F.3d 1163, 1176 (8th Cir. 2007). In resolving the second issue, we review a finding as to the amount of loss for clear error and the district court's decision to award restitution for abuse of discretion. See United States v. Petruk, 484 F.3d 1035, 1038 (8th Cir. 2007). The government has the burden of proof on both issues.

### A. Is BMG a Victim?

In Hughey v. United States, 495 U.S. 411 (1990), the Supreme Court held that the Victim and Witness Protection Act of 1982 ("VWPA")[2] was "intended to

---

[1] In his reply brief, Chalupnik argued for the first time that the MVRA does not apply to a criminal copyright infringement conviction because, although an offense "against property," it is found in Title 17, not Title 18, of the United States Code. We decline to consider this issue as it was not timely raised. See Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006). The statute provides that a willful infringer for private financial gain "shall be punished as provided under section 2319 of title 18." 17 U.S.C. § 506(a)(1)(A). Courts have applied the MVRA to criminal copyright convictions without discussing this issue. See United States v. Hudson, 483 F.3d 707, 710 (10th Cir. 2007); United States v. Susel, 429 F.3d 782, 784 (8th Cir. 2005).

[2] Initially codified at 18 U.S.C. § 3579 (1982), this statute as amended is now 18 U.S.C. § 3663. It continues to govern the award of discretionary restitution for offenses not covered by the MVRA.

compensate victims only for losses caused by the conduct underlying the offense of conviction." 495 U.S. at 416. Therefore, restitution may be awarded only to victims of the offense of conviction, and a victim may not be compensated for conduct unrelated to the offense of conviction, even if that unrelated conduct was the subject of criminal charges dropped by the government in exchange for the defendant's guilty plea. Id. at 420-21. Congress responded by adding a definition of "victim" that retained the core limiting principle of Hughey but clarified its application to certain offenses and to plea agreements. See 18 U.S.C. § 3663(a)(2)-(3) (Supp. III 1991).

When Congress enacted the MVRA in 1996, it included a definition of "victim" that again incorporated the core principle of Hughey:

> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . .

> (3) The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3663A(a)(2)-(3). Consistent with Hughey, the Senate Judiciary Committee Report explained that, unless a plea agreement provides otherwise, the "mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted." S. REP. NO. 104-179, at 19 (1996), reprinted in 1996-4 U.S.C.C.A.N. 924, 932. Congress also amended the VWPA so that the two statutes would contain identical definitions of the term "victim" and substantively identical plea agreement provisions. See 18 U.S.C. § 3663(a)(2)-(3); United States v. Ramirez, 196 F.3d 895, 899-900 (8th Cir. 1999).

Chalupnik argues that the government failed to prove that BMG was a "victim" for purposes of the MVRA because it presented no evidence that BMG, a retail mail-order seller of CDs and DVDs, had an interest in the infringed copyrights sufficient to make BMG a victim of his copyright infringement offense. This is a novel and intriguing contention. We agree with a number of its underlying premises. First, restitution is "essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." United States v. Carruth, 418 F.3d 900, 904 (8th Cir. 2005). Therefore, restitution, at least in theory, "tracks the recovery to which the victim would have been entitled in a civil suit against the criminal." United States v. Behrman, 235 F.3d 1049, 1052 (7th Cir. 2000) (quotation omitted). Second, copyright law generally limits standing to seek a civil remedy for copyright infringement to the owner of the copyright or to a person who holds an *exclusive* license to one of the owner's exclusive rights in the copyrighted work. See 17 U.S.C. §§ 106, 501(b); 3 Nimmer on Copyright § 12.02[B] (2007). This may be an unsettled issue of copyright law. See the conflicting opinions in Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881 (9th Cir. 2005) (en banc). But it appears that BMG could not bring a civil action against Chalupnik for copyright infringement unless it was the exclusive licensee of the copyright owners, and the government does not argue to the contrary. Third, the government offered no evidence that BMG was an owner or exclusive licensee of any of the infringed copyrights, and there is good reason to believe that BMG has not been granted exclusive licenses. See 3 Nimmer § 12.02[B] at 12-57 to 12-58.

Though we agree with Chalupnik's underlying premises, we agree with the government that BMG was a victim under the MVRA as a matter of law. The issue posed by Chalupnik is whether, to be a victim for purposes of the MVRA, a person must have standing to bring a civil action for the injury the criminal statute is intended to remedy -- here, copyright infringement -- or whether MVRA victims include persons who have other injuries proximately caused by, in the words of Hughey, "the conduct underlying the offense of conviction." 495 U.S. at 416. The MVRA does not

use the term, "conduct underlying the offense of conviction." Instead, it defines a victim as a person "proximately harmed as a result of the commission of" the offense. 18 U.S.C. § 3663A(a)(2). But the word "commission" reflects an intent to include the defendant's total conduct in committing the offense, an intent confirmed by the Senate Judiciary Committee Report, which paraphrased Hughey in referring to "the course of conduct under the count or counts for which the offender is convicted." S. REP. NO. 104-179, at 19.

For this reason, we conclude that the relevant analogy is not whether BMG could sue Chalupnik for copyright infringement. Rather, the relevant analogy is whether BMG would have a civil cause of action against Chalupnik for his conduct in committing the copyright infringement offense of conviction. As the district court noted at sentencing, the answer to that question is clearly yes, because Chalupnik's offense conduct included stealing or converting BMG property from BMG's bailee, USPS.[3] That qualifies BMG as an MVRA victim, just as the bank customer who suffered lost wages as a result of witnessing an attempted bank robbery was an MVRA victim in Moore v. United States, 178 F.3d 994, 1001 (8th Cir. 1999). The bank customer could not have sued the defendant for attempting to rob the bank, but the customer was an MVRA victim because he suffered pecuniary damage as a result of the defendant's commission of the offense. Accord United States v. Donaby, 349 F.3d 1046, 1054 (7th Cir. 2003) (owner of police car damaged during bank robber's getaway was MVRA victim).

---

[3]The court commented: "Isn't it a bailment [between BMG and USPS]? . . . You've [Chalupnik] converted the property to your own use. All right? And you've made a profit. . . . If the property can't be specifically recovered, then there's a constructive trust that's created in the proceeds of . . . that property. Which would be what? The $78,000. Just ordinary property principles, that would happen, right?"

## B. Did the Government Prove a BMG Loss?

When an MVRA victim is identified, the government must prove "the amount of the loss sustained by [the] victim as a result of the offense" by a preponderance of the evidence. 18 U.S.C. § 3664(e); see United States v. Searing, 250 F.3d 665, 667 (8th Cir. 2001). Chalupnik argues that the government failed to prove that BMG suffered lost profits, or any other actual loss, as a result of his committing the offense of conviction. On this barren record, we agree.

In concluding that BMG was an MVRA victim, the district court commented that it was appropriate to award restitution in the amount of Chalupnik's $78,818 in sale proceeds because BMG could recover these ill-gotten gains in a civil lawsuit. The government stresses this disgorgement concept on appeal. However, we rejected this approach to criminal restitution some two months after the district court ruled:

> The modern trend in private civil litigation endorses use of the common law remedy of restitution to punish intentional wrongdoers by compelling the disgorgement of all ill-gotten gain. *See* Restatement (Third) of Restitution and Unjust Enrichment § 51 (Tentative Draft No. 5, Mar. 12, 2007). . . . However, while restitution under the MVRA may be a form of punishment for Ex Post Facto Clause purposes . . . it is clear that Congress intended that restitution be a compensatory remedy from the victim's perspective. Therefore . . . MVRA victims, should be limited to compensation for their actual losses.

Petruk, 484 F.3d at 1038. In other words, while the availability of a civil remedy is relevant in determining *who* is an MVRA victim, the *amount* of restitution that may be awarded is limited to the victim's provable actual loss, even if more punitive remedies would be available in a civil action. Thus, while the fact that a defendant profited from the crime without causing actual loss to an identifiable victim may be an appropriate reason to increase his punishment, Petruk and the plain language of the MVRA confirm that punishment of a federal criminal defendant must be imposed by

means of criminal penalties -- fines, criminal forfeitures, and imprisonment. Restitution to MVRA victims "must be based on the amount of loss *actually caused* by the defendant's offense." Id. at 1036 (quotation omitted, emphasis in original).

Stripped of a disgorgement rationale, it is clear that the government proved no actual loss to BMG. The PSR recommended, and the district court agreed, that BMG suffered a "lost opportunity" when Chalupnik stole BMG's undeliverable discs and sold them to competing retail sellers. The PSR's lost opportunity rationale is valid in the sense that all authorized retailers of the copyrighted discs -- Wal-Mart, Best Buy, iTunes, BMG, and countless others -- as well as the copyright owners, suffered collective financial injury when infringer Chalupnik sold purloined discs at cut-rate prices to used record stores. But it would be a windfall to award BMG this entire collective "injury to the market." And the large number of victims and the difficulty of determining each victim's actual loss make the collective injury inappropriate for MVRA restitution. See 18 U.S.C. § 3663A(c)(3).

The government argues that the price at which Chalupnik sold the stolen discs is a reasonable, indeed conservative estimate of BMG's lost sales. One problem with this argument is that, for goods held by a merchant for sale, lost profits rather than lost sales revenues are the proper measure of "actual loss." A more fundamental problem is that proof of lost sales, like proof of lost profits, may not be "based entirely upon speculation." United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001). Here, the letter from BMG's senior counsel asserted that Chalupnik sold discs to used record stores whose customers "theoretically could have purchased them [from BMG], resulting in lost sales to BMG." But BMG's practice of destroying rather than restocking undeliverable discs meant that the discs Chalupnik stole would not have been sold by BMG, and there is no evidence that Chalupnik's sales diverted specific business from BMG. From this standpoint, BMG's position resembles that of the purported MVRA victims whose restitution awards were reversed because the government failed to prove actual loss through lost sales in Hudson, 483 F.3d at 710-

-9-

11, where counterfeit Microsoft software was turned over to the government by the infringing defendant's customer before any payment to the infringer, and in United States v. Adams, 19 Fed. Appx. 33, 35 (4th Cir. 2001) (unpublished), where pirated videocassettes were confiscated before the infringer could sell them.

Finally, the government argues that BMG should receive restitution *on behalf of* the unidentified copyright owners who would have been paid royalties had BMG sold the purloined discs. This argument is without merit because restitution to each victim is limited to "the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). The letter from BMG's senior counsel admitted that Chalupnik's criminal conduct "resulted in no royalty payments being made [by BMG] to the artists, record labels, music publishers, and movie studios," so there was no proof of actual loss to BMG arising out of its unproven relationships with copyright owners.

For the foregoing reasons, we vacate the restitution portion of the district court's judgment and remand for resentencing. Because our decision in Petruk clarified the applicable law after the district court entered the judgment, we leave to the district court's discretion on remand whether to reconsider the restitution issue on an expanded sentencing record as well as its previous decision not to impose a fine.

_____