**UNITED STATES of America, Plaintiff,**

v.

**James Edward STOUT, Defendant.**

**No. 1:07–cr–00080.**

United States District Court, S.D. Iowa.

Feb. 17, 2009.

Craig P. Gaumer, Richard E. Rothrock, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Paul D. Scott, Brown & Scott, PLC, West Des Moines, IA, for Defendant.

## ORDER ON RESTITUTION

ROBERT W. PRATT, Chief Judge.

Before the Court is the matter of James Edward Stout's ("Defendant") restitution. During Defendant's September 26, 2008 sentencing, Defendant objected to the restitution amount calculated in the Presentence Investigation Report ("PSR"). *See* Clerk's No. 61. Defendant filed a Memorandum on the matter on December 19, 2008. Clerk's No. 77. The Government filed a response on December 22, 2008. Clerk's No. 78. The Court held a hearing on December 23, 2008. Clerk's No. 79. The matter is fully submitted.

## I. BACKGROUND

On June 9, 2008, Defendant entered a guilty plea for Possession of Stolen Goods, in violation of 18 U.S.C. § 2315, and Re-

ceipt or Sale of a Stolen Motor Vehicle, in violation of 18 U.S.C. § 2313. PSR at 4. There was no plea agreement. *Id.* The offense conduct involved the sale of a 2002 Jayco Kiwi Too 28 foot Trailer ("2002 Jayco"), a 2006 Jayco Flight 27 foot Travel Trailer ("2006 Jayco"), a 1989 Thundercraft Boat and Yacht Club Trailer ("boat and trailer"), and a 2006 Chevrolet Aveo ("Aveo") (collectively "fenced items") to an undercover law enforcement operation in Council Bluffs, Iowa. *Id.* at 4–6. The law enforcement officers verified that each of the fenced items had been stolen. *Id.*; Hr'g Tr. at 12–13.[1] The fenced items were then transferred to Offutt Air Force Base and stored there for the duration of the undercover operation, a period of approximately six months. Hr'g Tr. at 8. After January 8, 2008, the fenced items were returned to the insurance company that had paid out insurance claims when the owners of the fenced items reported their property stolen. *Id.* The insurance companies subsequently sold the fenced items for salvage. *See* PSR at 7.

At the time of the sentencing, the Probation Office had not received victim information from one of the insurance companies and several of the victims but, nevertheless, calculated restitution in the amount of $41,427.09. *Id.* at 7, 22. At the sentencing, on September 26, 2008, Defendant objected to this amount, and the Court extended its determination of the restitution amount for no more than ninety days. Clerk's No. 61. The restitution hearing was scheduled for December 12, 2008 (Clerk's No. 63) and, subsequently, rescheduled for December 23, 2008. *See* Clerk's No. 71.

In his pre-hearing memorandum, Defendant for the first time contested whether

1. All transcript references refer to the unedited RealTime transcript provided to the Court by the court reporter.

he caused the calculated losses. Def.'s Br. at 3. Defendant argued, first, he should not be required to make restitution because the Government, rather than himself, was responsible for the loss to the victims and their insurance companies. *Id.* As a secondary argument, Defendant argued that the amount of restitution was not correct. *Id.* at 5. At the restitution hearing, the Government conceded Defendant's second claim, agreeing that he is not obligated to pay restitution beyond that owed for the four vehicles listed in the indictment. Hr'g Tr. at 2. The Government maintained, however, that the Mandatory Victims Restitution Act applies to the losses resulting from Defendant's offenses and that the Defendant should pay $27,869.84.[2] *Id.* at 25. Defendant concedes that this is the correct calculation of the loss to the victims but continues to assert that he should not be required to pay any restitution. *Id.* at 1, 25. Thus, the only remaining issue before the Court is Defendant's contention that he owes no restitution because the loss to the victims was caused by the Government rather than by Defendant's actions. At the hearing, the parties' arguments were taken under advisement by the Court, so that the Court and the parties could engage in additional research on the legal issues raised by Defendant's argument.[3] Hr'g Tr. at 30. For the reasons set forth below, the Court now orders Defendant to pay restitution in the stipulated amount to the victims and their insurers.

## II. LAW

### A. *The Mandatory Victims Restitution Act of 1996*

Under the Mandatory Victims Restitution Act of 1996 ("MVRA"), courts are required to order restitution in instances, inter alia, where a defendant has been convicted of an offense against property under Title 18 of the United States Code. 18 U.S.C. § 3663A(a)(1); § 3663A(c)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of [a covered] offense ..., the court shall order ... that the defendant make restitution to the victim of the offense...."). In enacting the MVRA, Congress amended the Victim and Witness Protection Act ("VWPA") of 1982, under which restitution for property offenses had been discretionary. Pub. L. 97–291, § 2(b)(2), 96 Stat. 1248 (1982). Because of the nearly identical language in the two Acts, case law interpreting the VWPA is often instructive to understanding the MVRA. *See United States v. Oslund,* 453 F.3d 1048, 1063 (8th Cir.2006) (noting the similarities between the two Acts).

Both the VWPA and the MVRA were designed "to ensure that the Federal Government does all that is possible within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant." VWPA § 2(b)(2); *see also*

---

**2.** The Restitution Worksheet provided by the Probation Office lists the following restitution amounts: $3,184 to Foremost Insurance Group for the boat and trailer; $100 and $4,644.40 to the owner and EMC Insurance, respectively, for the 2002 Jayco; $500 and $14,495.44 to the owner and USAA Insurance, respectively, for the 2006 Jayco; and $250 and $4,696 to the owner and Allied Mutual Insurance Co., respectively, for the Aveo. Clerk's No. 82. These amounts total the $27,869.84 to which the parties stipu-

lated. The owners' losses are deductibles paid to the insurer. PSR at 7. The loss to each insurer was calculated as the amount paid to the owner minus the amount recouped through the salvage sale of the fenced item. *Id.*

**3.** The Court acknowledges and thanks defense counsel for its response to the Court's request for further legal research with a letter posted on January 9, 2009.

S.Rep. No. 104–179, at 18 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 931 ("It is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender be held accountable to repay these costs."). A victim under the MVRA is "a person directly and proximately harmed as a result of the commission of" the offense. 18 U.S.C. § 3663A(a)(2). Where the offense results in the loss of property, the restitution order shall require that the defendant either return the property or:

> if return of the property [ ] is impossible, impracticable, or inadequate, pay an amount equal to—
> (i) the greater of—
> (I) the value of the property on the date of the damage, loss, or destruction; or
> (II) the value of the property on the date of sentencing, less
> (ii) the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1)(B).

■ Restitution is "essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." *United States v. Carruth,* 418 F.3d 900, 904 (8th Cir.2005). Therefore, restitution " 'tracks the recovery to which the victim would have been entitled in a civil suit against the criminal.' " *U.S. v. Chalupnik,* 514 F.3d 748, 753 (8th Cir.2008) (citing *United States v. Behrman,* 235 F.3d 1049, 1052 (7th Cir.2000)).

> The modern trend in private civil litigation endorses use of the common law remedy of restitution to punish intentional wrongdoers by compelling the disgorgement of all ill-gotten gain. *See* Restatement (Third) of Restitution and Unjust Enrichment § 51 (Tentative Draft No. 5, Mar. 12, 2007).... [I]t is clear that Congress intended that restitution be a compensatory remedy from the victim's perspective.

*United States v. Petruk,* 484 F.3d 1035, 1038 (8th Cir.2007). Restitution to MVRA victims "must be based on 'the amount of loss *actually caused* by the defendant's offense.' " *Id.* at 1036 (citing *United States v. Rhodes,* 330 F.3d 949, 953 (7th Cir.2003)). The defendant need not have benefitted from the loss to the victim to be held responsible for restitution under the MVRA. *See United States v. Moten,* 551 F.3d 763, 767–68 (8th Cir.2008) (finding that a defendant convicted of aiding and abetting could be held jointly and severally liable for the victim's losses, including for funds that went into the pockets of other co-defendants).

Section 3664 sets forth the procedures for ordering restitution. It demands that courts "order restitution to each victim in the full amount of each victim's losses … and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). In addition, "insurance companies are entitled to recover for the amounts paid on claims, and restitution can be split between victims and insurers." *United States v. Searing,* 250 F.3d 665, 668 (8th Cir.2001) (citing 18 U.S.C. §§ 3664(f)(1)(B), 3664(j)(1), and *United States v. Florence,* 741 F.2d 1066, 1067, 1069 (8th Cir.1984)).

### B. Law and Analysis

■ Defendant claims that his offenses did not "result in the loss of property" under the MVRA but rather that it is the Government's conduct that caused the victims' losses. Defendant argues that if the fenced items were immediately returned to their owners, they would not have needed to file insurance claims. Because the fenced items were only returned some

months later to the insurance companies, the insurance companies could not return them to the owners. Instead, the insurers redeemed what value they could from the fenced items by selling them at salvage costs—a normal procedure for insured items that become the property of the insurer after a claim has been paid out on the vehicle. *See* Lee Russ & Thomas Segella, 12 *Couch on Ins.* § 177:5 (3d ed. 2008). The Government counters that Defendant's theft of the fenced items caused the losses to the victims, and, thus, the victims and their insurers are entitled to be compensated by him for their losses. Gov't. Br. ¶ 8. The parties largely couch their arguments in terms of causation, but Defendant also asserts that there is an obligation upon the Government to mitigate losses to Defendant. The Court first addresses whether causation principles limit Defendant's responsibility to pay restitution to the owners of the items he fenced, and then turns to the issue of whether there is a special obligation on the Government to mitigate losses resulting from an undercover law enforcement investigation, the failure of which negates Defendant's obligation to pay the restitution imposed by the MVRA.

1. *Proximate causation and intervening cause.*

In *Hughey v. United States,* the Supreme Court held that the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). When Congress subsequently passed the MVRA, it also amended the VWPA, adding the prerequisite that restitution may be imposed "only in those in-

stances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted.'" *United States v. Chalupnik,* 514 F.3d at 753 (citing S. Rep. No. 104–179, at 19).

Despite the fact that the MVRA makes no reference to a causation requirement outside of the definition of victim, several Courts of Appeals, including the Eighth Circuit, have concluded that the MVRA contains a causation requirement, not only with respect to who may be a victim, but also with respect to which acts may result in loss stemming from the defendant's offense. In *United States v. Reichow,* the Eighth Circuit Court of Appeals considered causation when it held that restitution under the MVRA could include damage to police cars occurring during the defendant's flight from a bank robbery. The Eighth Circuit found that, because the escape phase of the robbery was part of the offense, the damage caused during the defendant's escape was proximately related to the offense and was properly included in the required restitution. 416 F.3d 802, 804–05 (8th Cir.2005) (citing a factually similar case, *United States v. Donaby,* 349 F.3d 1046, 1052–53 (7th Cir.2003)). This analysis follows the Supreme Court's interpretation of the VWPA in *Hughey,* as well as general restitution principles that provide: "In measuring the unjust enrichment of conscious wrongdoers ..., the court may apply such tests of causation and remoteness ... consistent with the object of the remedy, as reason and fairness dictate." Restatement (Third) of Restitution and Unjust Enrichment § 51 (Tentative Draft No. 5, Mar. 12, 2007).[4]

---

4. Furthermore, the Senate report accompanying the MVRA suggests that such a causation

requirement was intended to be read into the Act:

Several Courts of Appeals · have had greater opportunity to address and develop case law regarding the need for a causal link between a victim's losses and defendant's offenses under the MVRA or VWPA. For example, the Seventh Circuit in *Donaby* and the First Circuit in *United States v. Cutter* have both determined that a district court may be required to engage in a factual determination of causation when considering whether "the damage arose out of the convicted offense" for the purposes of the MVRA. *Donaby*, 349 F.3d at 1053; *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir.2002). In *Cutter*, the First Circuit applied the following causation standard:

> [T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally). A sentencing court should undertake an individualized inquiry: what constitutes sufficient causation can only be determined case by case, in a fact-specific probe.

313 F.3d at 8–9 (citing *United States v. Vaknin*, 112 F.3d 579, 589–90 (1st Cir. 1997)). Applying similar reasoning under the VWPA, the Ninth Circuit has concluded that "the main inquiry for causation in restitution cases [is] whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct." *United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999) (reversing a restitution order because of an inadequate causal link between a false statement on a loan application and

the change in the estimated value of the land). The Ninth Circuit has subsequently applied this standard to several MVRA cases. For example, in *United States v. De La Fuente*, the defendant argued that the costs incurred by federal and county agencies were not· direct and proximate results of his crime where he pleaded guilty to two counts of mailing threats to injure. 353 F.3d 766, 768–69 (9th Cir. 2003). The Ninth Circuit, however, rejected the defendant's argument, holding that the restitution amount, which included cleanup and decontamination expenses, was not an abuse of discretion since the posting of the letters which contained threats and a white powder directly caused a reasonable concern of anthrax exposure in a mail processing center. *Id.* at 774; *see also United States v. Brock–Davis*, 504 F.3d 991, 1001 (9th Cir.2007) (holding that the defendant assumed the risk that a state agency would impose extensive costs and requirements for cleanup).

Here, the offenses to which Defendant pleaded guilty, possession and sale of stolen property, are offenses against property under Title 18 for which the MVRA mandates restitution. Each of the owners were deprived of their property when Defendant possessed and sold their property to the undercover fencing operation.· It is clear, therefore, that Defendant's offenses were a but-for cause of the victims' losses.

Additionally, the outcome that the vehicles were not immediately returned to their original owners after being sold to the undercover operation was foreseeable. It is a common sense conclusion that when items are sold to a fencing operation, it is

---

In all cases, it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution. The committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution.
S. Rep. No. 104–179, at 19, 1996 U.S.C.C.A.N. at 932.

unlikely that the rightful owners will be reunited with their property. Even if the Court were to conclude that the proximate cause analysis should proceed from the fact that Defendant sold the stolen items to an undercover operation, rather than an actual fencing operation, the Court cannot conclude that it was unforeseeable that the fenced items would not immediately be returned to their owners. It is regular police procedure for law enforcement to retain possession of property that is evidence in an investigation for the duration of the investigation. *See, e.g., United States v. Willson,* 8 Fed.Appx. 593, 594 (8th Cir.2001) ("Generally, a motion for return of property is properly denied (1) if the defendant is not entitled to lawful possession of the seized property, (2) if the property is contraband or subject to forfeiture, or (3) if the government has a continuing evidentiary need for the property."). The fact that the fencing operation was, in fact, an undercover law enforcement operation does not alter the foreseeable outcome of Defendant's offense.

Furthermore, the loss to the victims began when Defendant took possession of the fenced items, not just when he sold them to the undercover operation. The Government's subsequent decision to hold the vehicles as the undercover sting operation proceeded was not an intervening cause that led to the loss of victim's property, rather it merely exacerbated in a reasonably foreseeable way the financial loss caused by Defendant's possession and sale of the stolen property. *See United States v. Gordon,* 393 F.3d 1044, 1055 (9th Cir. 2004) ("Though the extent of [the victim's] loss may have been affected by outside forces, [the defendant's] conduct—and his alone—directly resulted in the loss.").

Defendant's offenses "directly and proximately harmed" the owners of the fenced items, making them victims within the meaning of the MVRA. 18 U.S.C. 3663A(a)(2). The Government's act of operating its undercover sting operation was not an intervening cause of the victim's loss that could break the causal link between Defendant's offense and the harm to the victims. Unless some other legal principle absolves Defendant of the restitution requirement, the MVRA requires the Court to enter a restitution order against Defendant for the stipulated losses.

### 2. *Does the Government have a special duty to reduce loss?*

 Defendant suggests that the Government should have acted differently after he turned over possession of the stolen vehicles to the undercover officers. Defendant asserts that the Government has an obligation to minimize the loss that results from Defendant's crime. The Court and Defendant's counsel exerted extensive time and energy researching what appears to be a novel question. Hr'g Tr. at 29–30. After reviewing the text of the statute and the underlying policy driving restitution for property crime victims, the Court concludes the MVRA encompasses reasonable losses that derive from a defendant's offenses, even where the financial losses are accentuated by legitimate law enforcement activities, such as undercover operations.

 The MVRA requires that, where the statute is applicable, a court order the defendant to pay restitution to the victims of the offense and that restitution must be for the "full amount" of a victim's loss. *United States v. Rea,* 169 F.3d 1111, 1114 (8th Cir.1999). The statute sets forth the calculus for determining the restitution amount at § 3663A(b), and the parties have stipulated to the amount calculated by the Probation Office. "[T]he district court has no discretion to adjust the total restitution due to the victim based on

funds held by law enforcement." *United States v. McCracken,* 487 F.3d 1125, 1128–29 (8th Cir.2007) (citing *United States v. Bright,* 353 F.3d 1114, 1123 (9th Cir.2004); *United States v. Alalade,* 204 F.3d 536, 540 (4th Cir.2000)).

Here, Defendant held and then sold property that rightfully belonged to other persons. He had no right to the property himself, and he had no right to petition for the return of the property. *See United States v. Smith,* 659 F.2d 97, 99 (8th Cir. 1981) (holding that when a defendant willingly gives a government agent property, there was no governmental seizure, and the government could retain the property); *United States v. Manelli,* 667 F.2d 695, 699 (8th Cir.1981) (affirming the district court's refusal to return funds to a criminal defendant where the defendant did not have a clear property right to the money and investigation into the crime was proceeding). Indeed, "it is contrary to public policy to permit the courts to be used by [a wrongdoer] to obtain the property he voluntarily surrendered as part of his attempt to violate the law." *Smith,* 659 F.2d at 99 (citing *United States v. Farrell,* 606 F.2d 1341, 1349 (D.C.Cir.1979)). The policy underlying the MVRA is not dissimilar; it also derives from the premise that a conscious wrongdoer should not benefit from his wrongful acts. *See* S.Rep. No. 104–179, at 18, 1996 U.S.C.C.A.N. at 931 ("It is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender be held accountable to repay these costs.").

Certainly there are constraints on the Government's ability to seize and hold personal property, and the Government concedes that it could not have destroyed the fenced items upon the conclusion of the investigation. Hr'g Tr. at 29 (foregoing the argument that "the government could

go the day after the investigation and blow up the cars"). The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal investigation and proceedings have terminated. *See, e.g., Manelli,* 667 F.2d at 699; *United States v. Bein,* 214 F.3d 408, 411 (3d Cir.2000) ("It is well settled that the Government may seize evidence for use in investigation and trial, but that it must return the property once the criminal proceedings have concluded, unless it is contraband or subject to forfeiture."); *cf. McCracken,* 487 F.3d at 1128–29 (setting forth the expectation that the upon return of seized funds to the victim, the district court would adjust the restitution owed by defendant accordingly). Here, the Government held the property during the natural life of the police investigation, six months—an entirely reasonable amount of time—and then fulfilled its obligation to return the seized property to its rightful owner once the criminal investigation was complete.

Additionally, the MVRA envisions that circumstances will arise where the return of the property is "impossible, impracticable, or inadequate" and sets forth the calculation the courts should apply in such a case. 18 U.S.C. § 3663A(b)(1)(B). It is this calculation that the Probation Office applied in determining the amounts in its Restitution Worksheet, amounts to which the parties have stipulated. Under circumstances such as those presented in this case, the immediate return of property sold to an undercover operation is impracticable. As Trooper Cowles testified at the evidentiary hearing, not only did the law enforcement officers hold the vehicles as evidence, they were concerned that if the vehicles were returned right away, Defendant, or other persons who had fenced stolen items, might have observed those items in the original owner's possession. The Government was validly

concerned that if any of the suspects who had sold items to the undercover operation observed those returned items, the undercover investigation could have been compromised, jeopardizing months of law enforcement effort and placing the lives of the undercover operatives at risk.

Finally, the court notes that under certain situations, the Government's treatment of seized property might support a tort or contract claim against the Government or even a constitutional claim for deprivation of property or just compensation for a government taking. *See, e.g., Sommers Oil Co. v. United States*, 241 F.3d 1375, 1381 (Fed.Cir.2001) (holding that a complaint alleging a failure to return seized funds according to an agreement between the plaintiff and government agents stated both a contract and a takings claim). Here, however, Defendant did not have a legitimate property interest in the items he fenced and it is clear that the Government acted reasonably when it retained the items sold to its undercover sting operation for six months before turning the items over to the insurance companies. The Court sees no basis for any claim that would impose a duty upon the Government to return the fenced items as its investigation was underway. Given the language and the policy underlying the MVRA, the Court cannot conclude that the Government was required to take actions that might compromise its investigation and prosecution of Defendant and other car thieves in order to mitigate the potential losses Defendant might eventually owe the victims of his crime in restitution.

### 3. *Ninety days for a final restitution determination.*

Section 3664(d)(5) provides: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed ninety days after sentencing." Despite this seeming restriction, the majority of the Courts of Appeals have concluded that § 3664(d)(5) is procedural, rather than jurisdictional. Provided that the delay beyond ninety days does not prejudice Defendant, the courts have concluded that a restitution order may be entered even where the ninety day time period has elapsed since sentencing. *See, e.g., United States v. Martinez*, 295 Fed.Appx. 460, 461 (2d Cir.2008) (finding no prejudice to the defendant when an evidentiary hearing was held 112 days after sentencing, the restitution order was entered 117 days after sentencing, and there was no evidence of stone-walling by either party to create prejudice); *United States v. Johnson*, 400 F.3d 187, 199 (4th Cir.2005) (reviewing case law from the First, Second, Third, Sixth, Tenth and Eleventh Circuits which support the proposition that the ninety day determination requirement is "procedural only and failure to comply with [it] does not provide a basis for questioning the accuracy of the restitution order"); *United States v. Cheal*, 389 F.3d 35, 48–51 (1st Cir.2004) (applying a plain error standard when Defendant did not object to a deferred restitution order when it was clear from the court's schedule that the restitution order would be deferred beyond the ninety day statutory period).

■ Despite the time frame in the MVRA for making the final determination on Defendant's restitution, the Court believes that the delay beyond ninety days in this case was justified and allowable because, first, the PSR did not contain complete information about the losses sustained by the victims due to delayed responses from the victims and their insurers. An initial delay was required for the

Probation Office to collect and communicate the information necessary to address the issue of restitution to the Court. Second, Defendant challenged the restitution amount calculated in the PSR. Given the need to collect the missing information, the Court set the date for the evidentiary hearing on the matter seventy-nine days from the sentencing to give both parties time to prepare. Third, during the evidentiary hearing that was re-scheduled to occur on the ninetieth day since the sentencing, the parties were made aware that the Court would not decide the restitution matter within ninety days of sentencing when the Court requested additional research on a legal issue raised by Defendant. The parties made no objection then, or later, to the delay in arriving at a final determination. Finally, the parties had stipulated to the amount of restitution Defendant would be required to pay at the hearing, within ninety days of the sentencing, leaving only the legal issue of whether the MVRA encompassed the losses sustained by the victims in this case.

The Court agrees with the several Courts of Appeals that have found, though under normal circumstances § 3664(d)(5) requires a final restitution determination within ninety days of sentencing, that when a delay is necessary to collect accurate information, to provide a hearing, and to allow the district court time to consider the parties' legal arguments, the provision does not present a bar entering a belated restitution order. The Court concludes that it continues to have jurisdiction over the restitution matter and the restitution set forth in this order may be entered against Defendant, despite a delay in reaching a final determination.

## III. CONCLUSION

Defendant is ordered to pay restitution to victims and their insurers in the stipu-

lated amount of $27,869.84, of which $22,923.84 is owed jointly and severally with Karen Kay Batten. The remaining details and conditions of the restitution will be set forth in the amended Judgment to be filed subsequent to this Order.

IT IS SO ORDERED.