# United States Court of Appeals
## For the First Circuit

No. 19-1813

UNITED STATES OF AMERICA,

Appellee,

v.

VINCENT GRAHAM, a/k/a Shawn, a/k/a MAC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Thompson, Kayatta, Barron
Circuit Judges.

Robert Herrick for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom
Halsey B. Frank, United States Attorney, was on brief, for
appellee.

September 24, 2020

**KAYATTA**, **Circuit Judge**.  After an investigation revealed that he had coerced a woman to engage in prostitution, defendant Vincent Graham pled guilty to federal charges of sex trafficking, drug trafficking, and interstate transportation of a person for prostitution in violation of the Mann Act.  At sentencing, the district court determined that Graham's victim was a "vulnerable victim" for purposes of applying a two-level enhancement under section 3A1.1(b)(1) of the United States Sentencing Guidelines. The district court sentenced Graham to 320 months on the sex and drug trafficking counts and to concurrent 120-month sentences on the Mann Act counts.  Graham now challenges the district court's application of the vulnerable-victim enhancement.  For the following reasons, we reject the appeal and affirm Graham's sentence.

## I.

Because this appeal follows a guilty plea, we draw the relevant facts from the change-of-plea colloquy, the revised pre-sentence investigation report, and the sentencing hearing transcript.  See United States v. Zapata-Vázquez, 778 F.3d 21, 22 (1st Cir. 2015).

Graham met J.R. in Biddeford, Maine, during the summer of 2015.  J.R. was addicted to heroin and engaged in prostitution to support her addiction at the time.  At their first meeting in July 2015, Graham provided J.R. crack cocaine in exchange for a

- 2 -

sexual favor and sold her heroin. Over the next month, Graham verbally, emotionally, and physically abused J.R., directed her to post commercial sex advertisements online, and took her from Maine to Lowell, Massachusetts, where he coerced her to engage in prostitution.

Graham retained nearly all of J.R.'s earnings from the prostitution. In exchange, he supplied her with enough heroin to keep her from suffering withdrawal symptoms. Graham also paid for minutes on a cell phone on which clients would contact J.R., as well as for some of the hotel rooms where J.R. would meet clients. Graham threatened to withhold heroin from J.R. if she did not continue to engage in prostitution, threatened to kill her if she left, and severely beat her. When J.R. asked Graham how she would be able to continue with prostitution with visible injuries, Graham replied that clients would "pay more" out of sympathy for her. After Graham assaulted her a second time, J.R. managed to escape from him with the help of family and friends.

Several months later, in December 2015, Graham saw J.R. again and gave her heroin and crack cocaine. He then took her and another adult woman to New Hampshire and Massachusetts for purposes of prostitution. J.R. continued to engage in prostitution at Graham's direction and for his profit until December 22, 2015, when Graham seriously assaulted her a third time. With the help of a friend, J.R. left after this assault and checked into the

Southern Maine Medical Center the next day. At the medical center, she reported living with a man who "beat her badly" and for whom she worked in prostitution. She described being hit in the face and experiencing significant pain. She further stated that she would "rather die than keep[] going back to that man," and that "[h]e's either going to kill me or I am going to kill myself."

Graham was charged with two counts of sex trafficking an adult by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), 1594(a); two counts of distributing heroin and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c); and two counts of transporting a person interstate with intent that the person engage in prostitution, or aiding or abetting such transportation, in violation of the Mann Act, 18 U.S.C. §§ 2421(a), 2. In January 2019, Graham pled guilty to all six counts.

One sex-trafficking count covered the trafficking in the summer of 2015. The second count covered the trafficking in December 2015. For purposes of calculating the Guidelines sentencing range, the district court treated the counts separately, rather than grouping them. For each count, the probation office and the government recommended that the court apply a two-level enhancement under section 3A1.1(b)(1) of the Guidelines, which applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The

probation office and the government also recommended that the court apply the vulnerable-victim enhancement to the Mann Act charge arising out of Graham's interstate transportation of J.R. in December 2015.[1] Graham objected, contending that J.R. was not "unusually vulnerable" as specified in the Application Note to section 3A1.1(b)(1).

The district court opted to apply the enhancement only to the sex-trafficking charges arising out of Graham's conduct in December 2015.[2] The court reasoned that had Graham's relationship with J.R. ended in July 2015, it "would find it difficult to come to the conclusion that [J.R.] was a vulnerable victim under the standard." However, the court concluded that by December 2015, J.R. was unusually vulnerable for several reasons. First, because Graham "had severely beaten [J.R.] on two occasions," and J.R. had "continued to work for him for a period of time even after the beatings," Graham "knew that [J.R.] was susceptible as a battered woman." Second, because Graham had emotionally abused J.R. in the summer of 2015, Graham knew that "he could use emotional

_____

[1] Only one of the Mann Act counts pertained to J.R.

[2] The record is not clear as to whether the district court applied the enhancement to the December 2015 Mann Act count involving J.R. However, because the Guidelines calculation was keyed to the count with the highest offense level, whether or not the district court applied the enhancement to the Mann Act charge did not alter the total offense level. More importantly, both parties presume -- and so shall we -- that any ruling on applicability of the enhancement to the December sex-trafficking count would apply equally to the Mann Act charge.

techniques" to control her.  And third, Graham "knew [J.R.] was susceptible as a drug addict because he had fed her drugs and he used drugs as a means of controlling her."

The vulnerable-victim enhancement raised the offense level on the trafficking count covering the December 2015 time period, generating a total offense level of 41 and a Guidelines sentencing range of 360 months to life.  The district court then weighed the sentencing factors set forth in 18 U.S.C § 3553(a), emphasizing that Graham had exploited J.R.'s vulnerability and could do the same to other women in the future.  Ultimately, the district court imposed a sentence of 320 months of incarceration on the sex-trafficking and drug counts, and a concurrent sentence of 120 months on the Mann Act counts.  Graham appeals.

## II.

"We review sentencing decisions for abuse of discretion, examining findings of fact for clear error and interpretations of the sentencing guidelines de novo."  United States v. Martínez-Mercado, 919 F.3d 91, 107 (1st Cir. 2019).

In challenging his sentence, Graham argues that the district court should not have applied the vulnerable-victim enhancement because J.R.'s "vulnerability was . . . typical for the offense conduct."  But we need not decide that issue.  Graham concedes that the district court's application of the vulnerable-victim enhancement did not affect his Guidelines sentencing

range. Where, as here, the Guidelines sentencing range would have been the same regardless of whether the district court's Guidelines calculations were correct, we have generally found any potential error harmless. See, e.g., United States v. Romero, 906 F.3d 196, 210-11 (1st Cir. 2018); United States v. Ponzo, 853 F.3d 558, 588 (1st Cir. 2017); United States v. Battle, 637 F.3d 44, 51 (1st Cir. 2011) (collecting authorities).

Of course, an appellate court may only deem such an error harmless "if, after reviewing the entire record, it is sure that the error did not affect the sentence imposed." United States v. Alphas, 785 F.3d 775, 780 (1st Cir. 2015). "In other words, resentencing is required if the error either affected or arguably affected the sentence." Id. Thus, on occasion we have reviewed a record to make sure that an allegedly erroneous application of the Guidelines did not influence the sentencing judge, even where the Guidelines sentencing range would have remained unchanged in any event. See United States v. Goergen, 683 F.3d 1, 4 (1st Cir. 2012). In conducting such a review, we seek to distinguish between a judge's reliance on facts in selecting an appropriate sentence and a judge's reliance on the significance that the Guidelines appear to assign to those facts in calculating, for example, the total offense level or criminal history category. See id.

Here, Graham asserts that the district court's application of the vulnerable-victim enhancement "went to the

heart" of its sentencing rationale and therefore was not harmless error. But the record tells a different story. While the district court based its sentence in part on the vulnerability of victims that Graham had harmed in the past and could harm in the future, context reveals that the district court was referring to the fact that J.R. and others were vulnerable in the ordinary sense of the word -- not to its legal determination that J.R. was "unusually vulnerable" under the Guidelines. This distinction is sensible, as Graham himself concedes by arguing that the ordinary victim of these crimes is quite vulnerable to the predations of men like him.

Further, although the district court relied on the Guidelines sentencing range of 360 months to life in determining Graham's sentence, it did not concentrate on the total offense level or on the application of any particular enhancement when explaining the sentence. Indeed, in a colloquy with the probation officer, the district court confirmed that the Guidelines sentencing range would remain the same regardless of whether the total offense level was 39 or 41. See Goergen, 683 F.3d at 4 (citing a similar colloquy as evidence that "the judge focused on the [Guidelines] sentence recommendation and not the raw guideline number underpinning it" and concluding that the district court's alleged misapplication of the Guidelines was harmless).

Because the record does not reflect that Graham's sentence was even arguably affected by the district court's conclusion that the two-level enhancement for vulnerable victims was warranted under the Guidelines, we hold that any alleged error in the application of that enhancement would have been harmless.

### III.

For the foregoing reasons, we **affirm** the sentence.