# United States Court of Appeals
## For the First Circuit

No. 21-1704

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID DAOUD WRIGHT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Michael Tumposky, with whom Jessica Hedges and Hedges & Tumposky, LLP were on brief, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

May 10, 2024

**HOWARD**, **Circuit Judge**.  David Wright challenges his 360-month aggregate sentence as procedurally and substantively unreasonable.  He asserts that the sentencing court made a "grouping" error that affected the sentence that he received, and that the court also failed to adequately explain its upwardly variant sentence.  Concluding that any grouping error had no impact on his sentence and that the court provided an adequate explanation for its variant sentence, we affirm.

## I.  Background

This is Wright's second direct appeal. The factual background underlying his convictions is set forth in our opinion from his first appeal.  United States v. Wright, 937 F.3d 8, 13-14 (1st Cir. 2019).  Here, we focus only on those facts relevant to his sentence.

In June 2015, Wright was indicted for conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1)-(2) ("Count 1"); conspiracy to obstruct justice, in violation of 18 U.S.C. § 371 ("Count 2"); and obstruction of justice, in violation of 18 U.S.C. § 1519, and aiding and abetting, in violation of 18 U.S.C. § 2 ("Count 3").  Superseding indictments added a count for conspiracy to commit acts of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b(a)(2) and (c) ("Count 4") and an additional count for obstruction of justice, in

- 2 -

violation of § 1519 ("Count 5").

A jury convicted Wright on all counts, and the district court sentenced him to 28 years' imprisonment and lifetime supervised release.

On appeal, we affirmed Wright's convictions on Counts 2-5 but overturned his conviction on the material-support count based upon an error in the jury instructions. Wright, 937 F.3d at 28, 37. We therefore vacated his conviction on Count 1 and remanded to the district court for further proceedings. Id. at 37. The government later dismissed Count 1, and an amended judgment issued. After a resentencing hearing before of a different judge, Wright was sentenced to imprisonment for 30 years -- two years more than before -- and lifetime supervised release.

## A. First Sentencing

We recount the relevant details of Wright's first sentencing, which shed light on certain issues addressed in his resentencing. In the pre-sentence investigation report ("PSR") prepared in advance of the first sentencing, the probation officer recommended that all five counts of conviction be grouped together pursuant to U.S. Sentencing Guidelines ("USSG") §3D1.2, which instructs courts to group all counts involving "substantially the same harm." The government did not object to this recommendation to group the counts, but it did object to the PSR's conclusion that Count 1, rather than Count 4, should be used to establish the

base offense level for sentencing.

The PSR determined that Count 1 -- providing material support to a designated foreign terrorist organization -- had the highest offense level of the counts in the group and thus produced the offense level applicable to the group pursuant to USSG §3D1.3, which provides that a group's offense level is the "highest offense level of the counts in the [g]roup." The PSR noted that the base offense level for that count was 26, pursuant to USSG §2M5.3(a). Because the offense involved the provision of material support with the "intent, knowledge, or reason to believe [that support would] be used to commit or assist in the commission of a violent act" the PSR added two levels pursuant to USSG §2M5.3(b). And because the offense was a felony involving a federal crime of terrorism, the PSR added 12 more levels pursuant to USSG §3A1.4. Finally, because of the obstruction of justice counts, two more levels were added pursuant to USSG §3C1.1. Thus, the Guidelines calculation resulted in a total offense level of 42 for Count 1. And because Wright's criminal history category was VI, The PSR calculated that the applicable Guideline Sentencing Range ("GSR") to be 360 months to life.

The government disputed that Count 1 had the highest offense level of the counts in the group. It instead identified Count 4 -- conspiracy to commit acts of terrorism transcending national boundaries. In pressing that view, the government took

the position that the base offense level for Count 4 should be derived from the conspiracy to commit murder guideline, USSG §2A1.5, which provides for a base offense level of 33, and not, as the PSR recommended, from the guideline for threatening or harassing communications, hoaxes, and false liens, USSG §2A6.1, which provides for a base offense level of 12. In the government's view, after adding the 12-level terrorism enhancement, the total offense level for Count 4 was 45 (higher than Count 1's total offense level of 42), and thus the applicable GSR for the group was life, based upon Wright's criminal history category of VI.

The original sentencing judge adopted the PSR in full, thereby agreeing with the probation officer that the correct GSR was 360 months to life. The court then imposed a below-guidelines sentence of 28 years' imprisonment and lifetime supervised release, consisting of 20 years' imprisonment on Counts 1, 3, and 5, to be served concurrently with a sentence of five years' imprisonment on Count 2, and an incarcerative term of eight years on Count 4, to be served consecutively to the 20-year sentence.

After imposing that sentence, the district court issued an opinion in which it explained that, on reflection, it should have adopted the government's calculation of the base offense level for Count 4. Thus, in the court's view, Count 4 should have produced the offense level for the group, and the GSR should have been immurement for life. Nevertheless, the court left the

sentence intact, observing that it was too late to change the judgment and that it would have imposed the same sentence in any event. See Fed. R. Crim. P. 35(a).

Wright appealed his convictions, but neither he nor the government appealed his sentence. As stated, we affirmed all of his convictions except for the conviction on Count 1, and we remanded for resentencing on the remaining counts. Wright, 937 F.3d at 37.

## B. Resentencing

At resentencing, whether USSG §§2A1.5 (murder conspiracy) or 2A6.1 (threatening communications) produced the base offense level for Count 4 was again in dispute.

The resentencing court concluded that the "law of the case" doctrine bound it to find that §2A6.1 -- threatening or harassing communications, hoaxes, and false liens -- produced the base offense level for Count 4. It reasoned that the court had reached that conclusion at the first sentencing, and the government had not appealed. Withal, the court noted that it agreed with the government's interpretation and that the court's agreement with that position would "affect [its] judgment in th[e] case about the section 3553 factors."

The government also raised an issue that had not been contested at the first sentencing. It contended that Count 4 -- the remaining terrorism count -- should not be grouped with Counts

- 6 -

2, 3, and 5 -- the obstruction counts. In support, the government argued that Count 4 met the conditions of USSG §3D1.1(b)(1), which excludes from grouping "[a]ny count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment," because 18 U.S.C. § 2332b -- the statute prohibiting the conduct underlying Count 4 -- requires that "the term of imprisonment imposed under this section [not] run concurrently with any other term of imprisonment" and authorizes a punishment for "any term of years" up to life. 18 U.S.C. §§ 2332b(c)(1)(A) and (F), (c)(2) (emphasis added). Wright and the probation officer disputed that Count 4 met the conditions for exclusion from grouping, reasoning that § 2332b(c) does not "specify a term of imprisonment to be imposed," and that, therefore, Count 4 should be grouped with the other counts under a straightforward application of the grouping rules. Wright further contended that the government had waived any argument against grouping, because, at the first sentencing, the parties had not disputed that the counts should be grouped.

The government claimed that no waiver occurred because it did not need to argue against grouping at the first sentencing proceeding. According to the government, even grouping all the counts together would still result in a GSR of life; thus, declining to group the counts would have put the total offense

- 7 -

level "beyond . . . the sentencing table."[1]  The court agreed with the government and decided to forgo grouping.

With this foundation established, the court then calculated the GSR.  It noted that, under the law of the case, the base offense level for Count 4 was derived from §2A6.1, which provided for a base offense level of 12.  The terrorism enhancement provided in §3A1.4 established a minimum offense level of 32; thus, the adjusted offense level was increased to 32.  Because the court declined to group the obstruction counts with Count 4, it determined that the 2-level enhancement for obstruction of justice under §3C1.1 should not apply to the offense level for Count 4.  However, it also found that, because there were now two groups (Count 4 constituting one, and Counts 2, 3, and 5 constituting another) with the same offense level (Counts 2, 3, and 5 combined for an offense level of 32), two levels should be added under USSG §3D1.4(a).[2]  Thus, the total offense level was 34, and because the

_____

[1] The sentencing table incrementally increases the GSR with the offense level and criminal history category at issue.  USSG Sentencing Table, ch. 5, pt. A.  The highest offense level contained in the sentencing table is 43, and produces a GSR of life; thus, where the applicable offense level is equal to or greater than 43, the GSR will be life.  Id.

[2] When a defendant has been convicted of more than one count, and those counts constitute more than one group, the court must first determine the offense level applicable to each group by applying §3D1.3, and then apply §3D1.4 to determine the combined offense level applicable to all groups.  USSG §3D1.1(a).

Pursuant to §3D1.4, to determine the combined offense level applicable to the groups, a court must count the group with the highest offense level as one unit and then increase the offense

- 8 -

criminal history category was VI, the GSR was 262 to 327 months. USSG ch. 5, pt. A (sentencing table).

The court then discussed the 18 U.S.C. § 3553(a) factors and sentenced Wright to an above-GSR total sentence of 30 years' imprisonment (360 months) and lifetime supervised release. The sentence consisted of 25 years' imprisonment on Count 4 and five years' imprisonment on the remaining counts, to be served consecutively with the 25-year sentence for Count 4.

This appeal followed.

## II. Discussion

Our review of Wright's sentence is twofold. First, "we . . . determine whether the sentence imposed is procedurally reasonable." United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021) (quotations omitted). If we conclude that it is, we next determine "whether it is substantively reasonable." Id. Generally speaking, a sentence is procedurally reasonable unless the district court commits a procedural error, such as "failing to calculate (or improperly calculating) the [GSR], treating the

---

level of that group depending on the seriousness of the offense levels of the other groups. The resulting offense level is the "combined offense level." USSG §3D1.4. As relevant here, §3D1.4(a) provides that one additional unit is counted for each group that is equally serious, and that if there are two units, two levels are added to the offense level. Lastly, USSG §3D1.5 instructs courts to use the "combined offense level" to determine the "total punishment" under Chapter Five of the USSG. Commentary to §3D1.5; Commentary to §5G1.2.

[g]uidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the [GSR]." United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020) (quoting United States v. Bermúdez-Meléndez, 827 F.3d 160, 163 (1st Cir. 2016)). And a sentence is substantively reasonable as long as the "sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Flores-Quiñones, 985 F.3d at 133 (quotations omitted).

We review preserved claims of procedural and substantive unreasonableness under the deferential abuse-of-discretion standard, reviewing findings of fact for clear error and issues of law de novo. United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020). We review unpreserved claims of error under the plain-error standard. United States v. Vélez-Andino, 12 F.4th 105, 112-13 (1st Cir. 2021).

## A. Grouping Errors

Wright first argues that the resentencing court's grouping of his offenses of conviction constituted a procedural error that affected his sentence. Moreover, he contends that the government waived any argument to the contrary when it agreed during the first sentencing proceeding that all four counts should be grouped together. The government does not defend the court's

grouping ruling. Nevertheless, it contends that any error was harmless under the circumstances because the GSR was not affected by the error.[3]

Wright does not dispute that the GSR would have been the same regardless of the alleged error. Specifically, it is undisputed that, even if all of the counts had been grouped together, the two-level adjustment under §3D1.4 would not have applied, but the two-level obstruction enhancement under §3C1.1 would have enhanced the offense level for Count 4. Thus, the total offense level would have been 34, and the GSR still would have been 262 to 327 months.

Because the government does not dispute that there was an error, and that the GSR was the same regardless of that error, the only issue is whether the error affected the sentence imposed. Where "the [GSR] would have been the same regardless of whether the district court's [g]uidelines calculations were correct, we have generally found any potential error harmless." United States v. Graham, 976 F.3d 59, 62 (1st Cir. 2020) (collecting cases). But we must nevertheless be "sure that the error did not affect the sentence imposed." United States v. Alphas, 785 F.3d 775, 780

---

[3] The government also contends that Wright waived any challenge to the grouping ruling on appeal because he mischaracterized the nature of that ruling in his opening brief. For present purposes, it suffices to assume that Wright's challenge is preserved -- nevertheless, we note that we doubt that he waived it.

- 11 -

(1st Cir. 2015). "In other words, resentencing is required if the error either affected or arguably affected the sentence." Id.

Wright contends that the grouping error was not harmless because, even though the GSR would have been the same, "the court calculated the total punishment separately for each 'group,' and then ran those sentences consecutively." The record supports Wright's assertion that the court made separate calculations. In explaining the sentence that it imposed, the court stated that it was treating Count 4 and Counts 2, 3, and 5 as "two crimes" and that "[o]ne part is the . . . terrorist conspiracy" and the "other part is the obstruction." And he is correct that the court determined the sentence for Count 4 first, before determining the sentences for Counts 2, 3, and 5, and then imposing those sentences consecutively.

Nevertheless, reading the record as a whole, it is clear that the court's grouping ruling did not affect the overall sentence imposed. Instead, the record shows that, independent of the grouping ruling, the court imposed the sentence in two parts because (1) it was focused on the fact that Count 4 had to be imposed consecutively, and thus logically should be considered separately; and (2) it was responding to the government's repeated requests throughout the resentencing proceeding that the court impose a serious sentence for Count 4, with a focus on what a reasonable sentence for that count would be, separate and apart

from determining a reasonable overall sentence and a reasonable sentence for the obstruction counts.

The government trained its arguments on ensuring that the sentence imposed for Count 4 reflected what it viewed as a sufficiently serious sentence because of another issue that had arisen during the first sentencing. In that proceeding, the court had initially stated that the sentence for Count 4 would be 28 years, and that all counts would run concurrently. However, when the government reminded the court that the sentence for Count 4 had to be imposed consecutively to those of the other counts, the first sentencing court responded that it would instead "make [Count 4] an 8-year count, so that the total sentence is 28 years," and the resulting judgment reflected that approach. At the resentencing proceeding, the government explained that it didn't "want to have the same issue arise in this sentencing as the last one" -- that is, it did not want Count 4 to result in a sentence that was, in the government's view, of insufficient length. Thus, it requested a specific sentence for Count 4 -- a sentence of at least 30 years.

Although the sentencing court did not at that point in the hearing indicate what its sentence for Count 4 would be, it told the government to "[a]ssume [it] w[ouldn]'t do it quite that way" -- referring to the first sentencing court's alleged failure to adequately consider the sentence for Count 4. Additionally, in

its assessment of the § 3553(a) factors, the court specifically stated that the terrorist conspiracy count was a "very serious offense," that Congress ha[d] "annunciate[d] heavy sentences" for it, and that "the guidelines [for it] are quite strong." Those statements are best read to refer to the fact that, pursuant to 18 U.S.C. § 2332b, Count 4 carries a maximum sentence of life, and to the fact that, in the court's view, the correct GSR for Count 4 was in fact life imprisonment (despite the court's acknowledgement that it was bound by the law of the case to find that it was 262 to 327 months). The court further stated that it had to be "respectful of those kinds of choices," indicating its agreement with the government that Count 4 required a serious sentence and should be considered separately.

The court also stated that it must consider the obstruction counts and the terrorist counts separately because that's "where we start in thinking about consecutive [sentences]," referring to the requirement that the sentence for the terrorism count be consecutive and that, in the court's view, it therefore should be considered separately.

Finally, the court stated that, "as [the government] pointed out," it had to consider first the appropriate sentence for the terrorism crime and only then the appropriate sentence for the obstruction crimes "not merely as a matter of properly constructing the guideline calculation" (emphasis added). Thus,

it indicated that there was a reason for imposing Wright's sentence in two parts that was independent of the Sentencing Guidelines: Wright's conviction on Count 4 independently required a serious sentence.

In summary, Wright is correct that the court calculated the punishment for the terrorism count and for the obstruction counts separately and then imposed those sentences consecutively. The record, however, makes clear that there was a reason independent of the grouping ruling that caused the court to do this. The court performed two separate calculations because, in its view, Congress required the court to impose a sentence on the terrorism count consecutively and because the court agreed with the government's argument that Count 4 deserved a serious sentence. Accordingly, any grouping error was harmless under the circumstances.

## B. Vindictiveness Claim

Wright next contends both that the resentencing court failed to adequately explain why its imposition of a more severe sentence than the one vacated on appeal was not vindictive, and also that there was no adequate reason for a higher sentence. The sentence, according to Wright, was thus generally unreasonable for lack of proper explanation and because it violated his right to due process.

Generally speaking, under the so-called <u>Pearce</u> rule, a

presumption of vindictiveness may arise when a judge imposes a more severe sentence after a new trial, unless "the reasons for . . . doing so must affirmatively appear [and] . . . . [are] based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." North Carolina v. Pearce, 395 U.S. 711 726 (1969). The rule ensures that defendants do not face higher sentences simply because they choose to exercise their right to appeal or to collaterally attack their conviction. See id. at 725-26.

We have held, though, that "[t]he Pearce presumption does not arise where 'different sentencers assessed the varying sentences that [a] defendant received.'" United States v. Clark, 84 F.3d 506, 508 (1st Cir. 1996) (emphasis in original) (quoting Texas v. McCullough, 475 U.S. 134, 140 (1986)), superseded on other grounds United States v. Nagell, 911 F.3d 23 (1st Cir. 2018). Here, there is no indication that the resentencing court imposed a more severe sentence because Wright appealed. Indeed, the court expressly acknowledged its obligation when it stated that, although it had reviewed the first sentencing court's decisions, it had to make an "independent judgment." Accordingly, we reject Wright's due-process-based procedural-reasonableness challenges.

## C. Claims of Inadequate Explanation

Wright next contends that his sentence must be vacated

- 16 -

because the facts that the court found supported a below-guidelines sentence -- not the upwardly variant sentence that the court imposed -- and although the court noted certain facts that could have supported the upward variance, it never tied them to the sentence imposed or to the GSR.

As an initial matter, in his brief Wright framed this argument as one of substantive unreasonableness, but during argument before us he asked that we consider whether it amounted to either a substantive or procedural error. Although arguments raised for the first time at oral argument are normally deemed waived, see United States v. García-Ortiz, 528 F.3d 74, 84 (1st Cir. 2008), we will nevertheless consider his argument from both angles.

The government contends that our review is for plain error because Wright never made any objection that the court had not, or had not adequately, explained the upward variance. But, if construed as a substantive challenge, Wright's argument is preserved regardless of whether he objected. In Holguin-Hernandez v. United States, 140 S. Ct. 762 (2020), the Supreme Court explained that "where a criminal defendant advocates for a sentence shorter than the one ultimately imposed" -- as Wright did here -- the defendant "has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence." Id. at 766-67. A concurring

opinion in Holguin-Hernandez explained that the majority opinion should not be read to suggest that "a generalized argument in favor of less imprisonment will insulate all arguments regarding the length of a sentence from plain-error review." Id. at 767 (Alito, J., concurring) (emphasis in original).  But we have indicated that where, as here, a defendant asserts on appeal that his sentence is substantively unreasonable because the court did not give an adequate explanation for an upward variance, we will treat that issue as preserved so long as the defendant had requested in district court a shorter sentence than the one imposed. See, e.g., United States v. García-Mojica, 955 F.3d 187, 192, 194 (1st Cir. 2020).  Thus, insofar as his challenge is substantive, our review is for abuse of discretion.

### i. Procedural Reasonableness

To the extent that Wright alleges a procedural error based on the insufficiency of the court's explanation, our cases require that a contemporaneous objection be made to preserve the claim.  United States v. Merced-García, 24 F.4th 76, 80-81 (1st Cir. 2022).  Therefore, because no such objection was made, Wright must show plain error -- that is, "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 79-80 (alterations in original) (quotations omitted).

We begin by reviewing whether the court's explanation (or lack thereof) constituted a procedural error. A claim of such an error is based on 18 U.S.C. § 3553(c), which provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.]" To satisfy that requirement, the court must identify the "main factors behind its decision." United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015).

Here, the district court's explanation did not fall short of that requirement, and it certainly did not clearly or obviously do so. When it considered the § 3553(a) factors, the court began by noting "the seriousness of the offense." In doing so, it hearkened back to its earlier statement in the proceeding that, although the PSR's view of the GSR for Count 4 was the law of the case, the court in fact agreed with the government that the GSR should have been life, and the court's view of that question would "affect [the court's] judgment . . . about the section 3553 factors." The court further noted that Congress has "annunciate[d] heavy sentences, [and] the guidelines are quite strong" -- again referring to its view of the correct GSR and to Count 4's maximum sentence of life -- and stated that it had to be "respectful of those kinds of choices."

The court next found that Wright's role in his crimes was not just "game-playing" or "role-playing," as he had testified

at trial, and noted that it would "take . . . into consideration" Wright's deceptive testimony in imposing a sentence. More specifically, the court found that Wright had "lied [and] . . . misrepresent[ed] . . . what his [true] role was" and that although such conduct had not been charged as perjury, the court had to consider what "that mean[t] in terms of culpability."

Third, the court noted that it viewed the terrorism and the obstruction charges as "working hand in hand and accelerating each other" in a way that is "about as significant [a crime] as society faces in the absence of actual homicide."

Finally, the court discussed general deterrence and observed that, because of the need for that deterrence, "this is an area in which a serious sentence is imposed."

The court did not expressly link these reasons to the upward variance. Nevertheless, "that linkage may fairly be inferred from a review of the sentencing transcript." United States v. Davis, 2022 WL 4377174, at *2 (1st Cir. 2022). And the reasons that the court gave could certainly be considered "as falling outside the factors explicitly considered by the Guidelines." García-Mojica, 955 F.3d at 193. At the very least, Wright has not shown how the court's failure to expressly link the reasons to the upward variance was an error that was plain.

By extension, Wright also has not demonstrated that the district court plainly erred when it opted not to impose a sentence

below the GSR.  Wright does point to several instances in which the court suggested that the GSR was, in its view, too high. The court observed that Wright appeared to recognize why his crime was wrong, which it noted "suggests some modification . . . of the guidelines."  The court also acknowledged that Wright was "thirsty for knowledge [and] opportunities," and therefore the lack of programming in prisons due to the COVID-19 pandemic "counsel[ed] against a more severe sentence than in the range of the low end of the guidelines."  But such statements do not necessarily connote that the court believed that a downward variance was warranted (and surely do not clearly or obviously suggest that); rather, a reasonable interpretation of them is that, without such factors, the court might have imposed a higher sentence than the one it imposed.  Accordingly, under the circumstances, "no clear or obvious 'lack of explanation' error" under § 3553(c) occurred.  Vargas-García, 794 F.3d at 166.

### ii. Substantive Reasonableness

We next turn to whether that same alleged lack of or insufficient explanation made Wright's sentence substantively unreasonable.  As stated, our review is for abuse of discretion.  And in the context of an upwardly variant sentence, as with any other sentence, "the distinguishing characteristics of a substantively reasonable sentence are 'a plausible rationale' and 'a defensible result.'"  United States v. Valle-Colón, 21 F.4th

44, 50 (1st Cir. 2021) (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)).

Our reasons for concluding that there was no clear or obvious procedural error also lead us to conclude that there was no such substantive error under an abuse-of-discretion standard. See id. (discussing the "overlap" between procedural and substantive challenges of that nature). Specifically, the sentencing court discussed three factors that we can infer the court believed were not adequately accounted for in the GSR and justified an upward variance, and which together constitute a plausible rationale: (1) the seriousness of the offense, which the court viewed as greater than the GSR suggested -- both because of the Congressionally determined maximum sentence attached to Count 4 and because of the court's view that what it deemed the law of the case was not correct; (2) that Wright's deceptive testimony at trial was problematic and made him more culpable; and (3) that the combination of the obstruction and the terrorism involved in Wright's case made the crime extremely serious. Furthermore, although the court acknowledged and discussed certain factors that it viewed as mitigating, a fair inference from the court's discussion (though it did not say so explicitly) is that the court gave such mitigating factors less weight than it gave the aggravating factors. See United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011) ("That the sentencing court chose not to attach

to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable."); United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016) (noting that, in context of procedural reasonableness, that the explanation of the sentence must be either "explicit" or a "fair inference from the sentencing record").

Nor can we say that the result was not defensible. The upward variance was 33 months above the top of the GSR, or an approximately ten-percent increase over that upper limit. Given the serious nature of the offenses of conviction and the conduct involved, the court could have reasonably viewed the sentence as "sufficient, but not greater than necessary," to achieve the "legitimate goals of sentencing." Vargas-García, 794 F.3d at 168 (quoting 18 U.S.C. § 3553(a)).[4]

---

[4] We also reject Wright's assertion that the court "claim[ed] that [it] was imposing a below-Guideline sentence." The court stated that the 300-month sentence it was imposing for Count 4 was "below various of the guidelines that [the court] had talked about." But, read in context, it is clear that the court was referring to the GSR that the government had contended attached to Count 4 due to §2A1.5, a position with which the court stated it agreed and which was discussed at length during the proceeding. Moreover, and in any event, any notion that the court did not realize that it was imposing a sentence above the GSR is refuted by its written statement of reasons, in which the court checked a box indicating that the sentence it imposed was "above the guideline range." See United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (explaining that, in evaluating the reasonableness of a sentence, we review "the district court's . . . near-contemporaneous written statement of reasons" among other things).

## III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** Wright's sentence.